UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kortney Greer,                                              Case No. 15-cv-465 (PAM/JSM)

                        Plaintiff,

v.                                                          **MEMORANDUM AND ORDER**

Walsh Construction Company,

                        Defendant.

_____

This matter is before the Court on Defendant Walsh Construction Company's
Motion to permit the jury to apportion fault to two non-parties by including them on the
verdict form, and Plaintiff Kortney Greer's Motion to exclude those non-parties from the
verdict form.  For the reasons that follow, the Court grants Greer's Motion and denies
Walsh's Motion.

**BACKGROUND**

Plaintiff Kortney Greer was injured on his motorcycle on July 10, 2013, when he
swerved to avoid a road hazard—a large uncovered hole in the middle of eastbound
University Avenue in St. Paul.  (Compl. (Docket No. 1-1), ¶ 2.)  Defendant Walsh
Construction Company was the general contractor for the Central Corridor Light Rail
Transit construction project, which allegedly created the road hazard.  (Id. ¶ 3.)  The
Metropolitan Council ("Met Council") and the City of St. Paul are not parties to this
action, but were involved in the events giving rise to it.  The Met Council is a "public
corporation and political subdivision of the state."  Minn. Stat. § 473.123, subd. 1.  It

operates Metro Transit, the Twin Cities' public transit system, and in that capacity is responsible for transit expansion projects such as the light rail project. What We Do, Metropolitan Council, http://www.metrocouncil.org/ About-Us/Organization.aspx (last visited Aug. 2, 2016). The City's Public Works department is responsible for "the design, construction, and maintenance of [] street . . . infrastructure [] in Saint Paul." Public Works, City of Saint Paul, https://www.stpaul.gov/departments/public-works (last visited Aug. 2, 2016). During the light rail project, the Public Works department followed up with and documented complaints associated with construction. (Rohland Decl. (Docket No. 23-3) ¶ 1.) Public Works forwarded all such complaints to the Met Council. (Id.)

The record shows that the City first learned of the road hazard that ultimately injured Greer the day before his accident. A St. Paul police officer who noticed the hazard parked her squad car in front of the hole and waited for the City's Public Works department to arrive. (Santos Decl. Ex. 1 (Docket No. 28-1), ¶¶ 2-4.) Public Works then moved an out-of-position steel plate back into place so that the hole was covered. (Id.) The next day, Public Works again received complaints about the hole. (Rohland Decl. ¶ 5.) Public Works consulted with the City's street maintenance department and decided that only the Met Council or Walsh could close the street. (Id. ¶ 6.) Thus, at approximately 4:15 p.m., a Public Works employee called the Met Council and reported the hole as an "urgent problem" that "required immediate attention." (Id. ¶ 7.) The Met Council called Walsh about the hole at 4:28 p.m. (Thomas Aff. Ex 12 (Docket No. 23-12) at 1.) More than two hours later, Greer was riding his motorcycle down University

Avenue when he came upon the uncovered hole, swerved to avoid it, and lost control of his motorcycle. (Compl. ¶¶ 1, 5.) Shortly after the accident, Public Works moved the steel plate back into place to cover the hole. (Santos Decl. (Docket No. 57-1) Ex. 4 (Sauer Dep.) at 20-22.)

Greer's Complaint raises a single count against Walsh, alleging that by failing to mark or secure the open hole, Walsh breached its duty to ensure that the roadway was safe during construction. In its Answer, Walsh stated that Greer's damages were caused in whole or in part by the acts or omissions of others and that his damages were caused solely and proximately by the acts, fault, conduct, or negligence of other persons/entities. (Answer (Docket No. 4) at 2-3.) Greer sought more information on these defenses, asking whether "any other person or entity (whether or not they are named as a party to this action) may be liable in whole or in part for the claims or damages asserted." (Interrog. No. 3 (Docket No. 54-1).) If so, Greer requested that Walsh "identify each such person or entity, the legal basis for [its] contention, the facts or evidence upon which [its] contention is based, and whether or not [Walsh] [had] notified each such person or entity of [its] contention." (Id.) Greer also asked Walsh to "identify all facts, evidence, documents, or persons with knowledge to support each denial and/or affirmative defense." (Interrog. No. 17.) Walsh responded by objecting that Greer's interrogatories were vague, ambiguous, and premature, and by stating that it would provide further responses as necessary. (Interrog. Answers Nos. 3 and 17.)

But Walsh never supplemented its interrogatory answers, and discovery closed on January 1, 2016. In February 2016, in conjunction with a motion to amend his pleadings

to assert a claim for punitive damages, Greer relied on affidavits from the St. Paul police officer and various City employees regarding the events described above.  Walsh did not at any time seek to reopen discovery to further investigate the City's or Met Council's actions regarding the road hazard.  Three months later, at a May 2016 settlement conference, Walsh for the first time indicated that it would ask the Court to put the Met Council and the City on the verdict form as potentially liable parties.  These Motions followed.

In his Motion, Greer argues that the jury should not be asked to determine whether fault should be apportioned to the Met Council and/or the City.  Greer points out that Walsh did not identify any potentially liable non-parties during discovery, despite requests for that information.  Greer further notes that, as the light rail project's general contractor, Walsh was solely obligated to ensure the safety of motorists and thus owed him a duty to keep the road clear of hazards.  Finally, Greer contends that the Met Council and City are statutorily immune from suit and that including them on the verdict form is inappropriate.

Walsh's Motion asserts that Public Works and the street maintenance department failed to mitigate a known hazard and are therefore at least partially responsible for Greer's injuries.  Walsh notes that despite the argument that the light rail project was outside of the City's jurisdiction and authority, Public Works took action two different times—the day before the accident and hours after the accident occurred—to correct the hazard.  Further, Walsh contends that the Met Council failed to remove the hazard after learning about it.  Walsh also argues that it only learned of the City's and Met Council's

involvement through witness testimony that Greer produced only days before the close of discovery.

**DISCUSSION**

Walsh argues that whether the City and the Met Council should be included on the verdict form is governed by the Minnesota Supreme Court's decision in <u>Staab v. Diocese of St. Cloud</u>, 813 N.W.2d 68 (Minn. 2012).  The <u>Staab</u> court determined that Minnesota's comparative fault statute requires submission to the jury the determination whether all "persons" involved in a particular event may be "severally liable" for a tort, clarifying that a person's liability is determined "at the time the tort was committed and not at the time of judgment in a civil action arising from the tort."  <u>Id.</u> at 77.  Thus, the jury must apportion fault among all potential tortfeasors "whenever multiple tortfeasors act to cause an indivisible harm to a victim, regardless of how many of those tortfeasors are named as parties in a lawsuit arising from that tort."  <u>Id.</u>

Greer contends that Staab did not address whether an immune government entity is a "person" within the meaning of the comparative fault statute.  According to Greer, because such an entity cannot be apportioned any fault under statutory immunity principles, <u>Staab</u> does not apply.

But whether <u>Staab</u> would otherwise require immune nonparties to be included on the verdict form is not relevant here, because it is too late for Walsh to make its request. Walsh cannot wait until months after the close of discovery to announce that other entities may be responsible for Greer's injuries.  The time to make that argument was before discovery closed—in seasonably supplemented interrogatory responses, for

example—so that Greer had the chance to investigate for himself the possibility that those entities should be made parties to the lawsuit.  Indeed, Walsh could have sought to join these entities as third-party defendants if Walsh believed that they were severally liable for the tort at issue.  Because Walsh did not mention these entities' potential liability in the course of discovery or bring any third-party claims against them, allowing Walsh to interject them at this late stage of the litigation, when trial of the matter is imminent, would unduly prejudice Greer.

**CONCLUSION**

Walsh is not entitled to the relief it seeks at this stage of the proceedings.

Accordingly, **IT IS HEREBY ORDERED that**:

1. Plaintiff's Motion Regarding fault of Immune Non-Parties (Docket No. 50) is **GRANTED**; and

2. Defendant's Motion for an Order to Allow the Jury to Apportion Fault to Nonparty Tortfeasors (Docket No. 51) is **DENIED**.

Dated:  August 23, 2016                     *s/ Paul A. Magnuson*
                                            Paul A. Magnuson
                                            United States District Court Judge